**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | No. 15-10223 |
| Plaintiff - Appellant, | D.C. No. 3:13-cr-08093-NVW-1 |
| v. | |
| CALVERT LES WOODY, | MEMORANDUM[*] |
| Defendant - Appellee. | |

Appeal from the United States District Court
for the District of Arizona
Neil V. Wake, District Judge, Presiding

Argued and Submitted May 11, 2016
San Francisco, California

Before: FARRIS, O'SCANNLAIN, and CHRISTEN, Circuit Judges.

The government appeals the district court's order suppressing incriminating

statements made by Calvert Woody, a Navajo Indian, who is charged with two

counts of abusive sexual contact, and two counts of aggravated sexual abuse of a

---

     [*]     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

child, in violation of 18 U.S.C. §§ 2244(a)(5) and 2241(c). We have jurisdiction under 18 U.S.C. § 3731, and we reverse.

I

The district court's factual findings regarding "historical trauma" and the impact of Native American culture on the voluntariness of Woody's statements were clearly erroneous. A "'finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573 (1985) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)).

Here, the district court relied on expert testimony from Dr. David McIntyre, who opined that Native Americans are susceptible to coercion during questioning because of cultural differences and "historical trauma." Yet during cross-examination, Dr. McIntyre acknowledged that his "very broad generalizations about Native Americans" could not be attributed to Woody specifically and conceded that Woody had not been diagnosed with historical trauma because "[t]here is no such diagnosis." Because these characteristics could not be attributed to Woody individually, the district court erred in relying on them to support its finding that Woody's will had been overborne.

2

Furthermore, Dr. McIntyre opined merely that cultural differences and historical trauma "may have affected the voluntariness of Mr. Woody's admission." Thus, even if Dr. McIntyre's opinions regarding cultural differences and historical trauma could be attributed to Woody individually, the district court's reliance on such evidence was in error because the impact such attributes had on the voluntariness of Woody's statements remained only speculative.

## II

In considering the totality of the circumstances, the district court's factual findings did not support its ruling to suppress Woody's incriminating statements. *See Dickerson v. United States*, 530 U.S. 428, 434 (2000); *Doody v. Ryan*, 649 F.3d 986, 1008 (9th Cir. 2011) (en banc). Woody agreed to the interview and arrived of his own volition. Agent Priestino testified that Woody confirmed Agent Fuller's account of the polygraph session. Woody acknowledged and waived his rights before questioning. Woody requested a ride to his vehicle following the session. And, perhaps most importantly, the questioning took place in a non-custodial setting.

In contrast, Woody's "low average" IQ of 82 did not constitute an intellectual disability and therefore is of limited significance in the analysis by itself, *cf. United States v. Preston*, 751 F.3d 1008, 1020 (9th Cir. 2014) (en banc)

(holding that district court erred in failing to suppress statements of intellectually disabled 18-year-old man with an IQ of 65), and "[n]othing in the record . . . suggests that [Agent Fuller's] failure to record the interview influenced [Woody's] admission," *United States v. Haswood*, 350 F.3d 1024, 1028–29 (9th Cir. 2003); *see United States v. Romo-Chavez*, 681 F.3d 955, 961 n.5 (9th Cir. 2012) ("[S]uppression is not warranted simply because the government fails to record an interview.").

In weighing the evidence before the district court and considering it in its entirety, *see Preston*, 751 F.3d at 1017; *Doody*, 649 F.3d at 1008, the totality of the circumstances should have compelled a conclusion that it was more likely than not that Woody's statements were voluntary. *See Lego v. Twomey*, 404 U.S. 477, 489 (1972). The district court therefore erred in suppressing Woody's incriminating statements.

**REVERSED.**

*United States v. Woody*, 15-10223

CHRISTEN, Circuit Judge, concurring:

I concur in the judgment because I agree that Dr. McIntyre was unable to tie his testimony regarding cultural factors to Woody specifically, and that without Dr. McIntyre's opinion the totality of the circumstances do not support the district court's ruling to suppress Woody's incriminating statements. I write separately to express my concern regarding the FBI's failure to record Woody's examination.

The conscientious district court judge in this case tried to follow our recent decision in *United States v. Preston*, where we emphasized the need for courts to consider "the totality of all the surrounding circumstances—*both* the characteristics of the accused *and* the details of the interrogation." *United States v. Preston*, 751 F.3d 1008, 1016 (9th Cir. 2014) (en banc) (quoting *Dickerson v. United States*, 530 U.S. 428, 434 (2000)). In *Preston*, we had the benefit of audiotapes and a transcript of the interrogation. *See id.* at 1020. Here, pursuant to the FBI's internal policy, we do not have a record of Woody's polygraph examination. This dramatically hindered the district court's and our ability to review the totality of the circumstances surrounding his admissions. According to Agent Fuller, the FBI has amended its policy to permit recording an examinee's reading and signing of the advice of rights and consent forms, but the amended policy requires agents to

1

then affirmatively *turn off* the recording equipment for the examination itself. The district court was troubled by this, and I am too.

The district court was free to consider whether the FBI's failure to record "might support a larger inference that [Agent Fuller's] testimony did not accurately portray the circumstances surrounding [Woody's] confession." *See United States v. Wright*, 625 F.3d 583, 604 n.10 (9th Cir. 2010) (quoting *United States v. Yunis*, 859 F.2d 953, 961 (D.C. Cir. 1988)), *superseded by statute on other grounds as recognized by United States v. Brown*, 785 F.3d 1337, 1351 (9th Cir.2015). But even with the inferences the district court drew from the FBI's failure to record, the totality of the circumstances does not support the court's suppression order. On the record presented, I agree we must reverse.